396 So.2d 578 (1981)
Alton GUIDRY, Plaintiff-Appellant,
v.
HOUSTON GENERAL INSURANCE COMPANY, Defendant-Appellee.
No. 8059.
Court of Appeal of Louisiana, Third Circuit.
March 11, 1981.
*580 Voorhies & Labbe, Richard C. Broussard, Lafayette, for plaintiff-appellant.
Allen, Gooch & Bourgeois, Frank Flynn, Lafayette, for defendant-appellee.
Before CULPEPPER, FORET and SWIFT, JJ.
FORET, Judge.
This is an "executive officer" tort action. Alton Guidry (Plaintiff) is seeking to recover damages for personal injuries sustained while operating a bulldozer belonging to the St. Martin Parish Police Jury (Police Jury). Houston General Insurance Company (Defendant) is the Police Jury's liability insurer, and only defendant. The action was tried by a jury which found no negligence on the part of certain "executive officers" of the Police Jury. Plaintiff appeals and presents two issues:
(1) Whether the trial court erred in allowing certain hearsay evidence as to statements made by a deceased person to be introduced over the objection of the plaintiff, and
(2) Whether the trial court erred in refusing to give certain instructions to the jury as requested by the plaintiff.

FACTS
Plaintiff was employed by the Police Jury for approximately ten years before the occurrence of the accident giving rise to this action. Plaintiff was operating a bulldozer owned by the Police Jury on July 17, 1975 and was attempting to dismount from that machine when he slipped and fell, fracturing his right leg. He further suffered a relatively rare complication of that type of injury known as "causalgia".
Plaintiff instituted this action on July 16, 1976, alleging that the Police Jury and certain of its employees had been given knowledge that a hazardous condition existed with respect to the above-mentioned bulldozer and that they had failed to correct that condition. Specifically, plaintiff alleged that the addition of expanded metal screens to the sides of the cab of the bulldozer made it very difficult to enter or exit therefrom and created the hazardous condition.
The metal screens were added to the cab to protect the operator while clearing trees. There were handholds provided on the left side of the machine to aid the operator in getting on and off of it. However, the addition of the screens made it fairly difficult, though not impossible, to exit or enter from the left side, and the operators, including plaintiff, started to do so from the right. There were no handholds, as such, on the right side, and plaintiff was injured while dismounting from that side.
The first trial of this matter ended with a mistrial being declared because of an acute illness suffered by plaintiff which made it impossible for him to proceed. The second trial resulted with the jury returning a verdict in favor of the defendant. Plaintiff then brought this devolutive appeal.

ADMISSION OF THE HEARSAY EVIDENCE
Sylvain Melancon, one of the alleged "executive officers" of the Police Jury, testified for plaintiff at the first trial. Plaintiff, at that trial, attempted to call this witness as an adverse party under the rule of cross-examination. However, the trial court held that since plaintiff had failed to join Sylvain Melancon as a defendant, he had to be called as plaintiff's own witness. Plaintiff was still able to elicit somewhat favorable evidence from him, though.
However, shortly before the second trial, he died, and his testimony given at the first *581 trial was read into the record at plaintiff's request. Defendant then sought to impeach this witness by the use of certain hearsay statements made by him to three different persons approximately one week before the trial.
Plaintiff objected to the introduction of this evidence arguing that it was hearsay and didn't fall under any of the exceptions to the hearsay rule. He further argued that if the exception relied upon by defendant was that of a "prior inconsistent statement", then defendant could not lay the proper foundation for its introduction as Sylvain Melancon was dead.
Defendant, on the other hand, argued that the hearsay statements which it was attempting to introduce were "declarations against interest" made by the deceased witness.
The trial court overruled plaintiff's objection and allowed the introduction of the hearsay statements finding that they were "declarations against interest". The record also indicates that, in addition, the trial court believed that the statements taken as a whole could be considered "prior inconsistent statements".
Plaintiff argues, in this Court, that the defendant failed to lay the proper foundation for the introduction of the hearsay statements as "prior inconsistent statements". Plaintiff cites LSA-R.S. 15:493[1] and State v. Reed, 290 So.2d 835 (La.1974) in support of his argument. The Supreme Court in State v. Reed, supra, stated, on page 837, with respect to LSA-R.S. 15:493, that:
"This article has always been strictly construed. The proper foundation must be laid. State v. Rogers, 256 La. 447, 236 So.2d 795 (1970). There has been no exception for the death of a witness; Demasi v. Whitney, 176 So. 703 (Orleans La.App.1937), or for rebuttal evidence, State v. Augusta, 199 La. 896, 7 So.2d 177 (1942). This is also the general rule in the rest of the country as pointed out by McCormick in the 2d ed. of Evidence, § 37, note 52. See Mattox v. United States, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895).
The admission of the statement was reversible error because the codal requirement of laying the proper foundation was not complied with. The jurisprudence has construed this to mean there are no exceptions to this rule, not even for the death of a witness. The error was compounded by the fact that the statement was unsworn. C.Cr.P. Art. 776, State v. Bussey, 162 La. 393, 110 So. 626 (1926)."
Admittedly, the court's ruling in Reed was made in the context of a criminal proceeding where constitutional considerations such as the defendant's right to confront the witnesses against him were involved.
The law regarding the hearsay rule and its exceptions as applied in civil cases is by no means settled in this State. There are those who argue that in a situation like the one before us, when a witness has died and his testimony from a prior proceeding is introduced into evidence in the retrial of a matter, then the requirement of laying a foundation to introduce "prior inconsistent statements" of that witness for purposes of impeachment should be relaxed. This argument is especially strong where the party offering the hearsay impeachment evidence had no notice of the existence of that evidence at the time the first proceeding was held. See Louisiana Evidence Law; Pugh G., 1978 Supp., pgs. 163-164. Here, the allegedly "prior inconsistent statements" of Sylvain Melancon were made approximately one week before the second trial of this matter.
*582 The trial court also ruled that these hearsay statements made by Sylvain Melancon were "declarations against interest" and, therefore, admissible under the exception to the hearsay rule. "Traditionally, to qualify under the declaration against interest exception to the hearsay rule, a statement must have been made by a person now unavailable, with respect to a matter as to which he had firsthand knowledge, and so much against his pecuniary and proprietary interest that a reasonable person under the circumstances would not have made the statements unless he believed it to be true." See Louisiana Evidence Law; Pugh G., 1978 Supp., pg. 535; Demasi v. Whitney Trust & Savings Bank, 176 So. 703 (La.App. Orl. Cir. 1937).
We find that it was error for the trial court to allow the hearsay statements into evidence. The statements testified to by defendant's witnesses can only be described as ambiguous at best. They reflect that Sylvain Melancon was unsure as to whether the testimony he had given at the first trial was correct. Further, the statements, as testified to, failed to constitute "declarations against interest".
We find, in addition, that the statements failed to constitute "prior inconsistent statements" and were inadmissible as such even if defendant could have laid the proper foundation for their introduction.
Defendant argues that if this Court should find that the hearsay evidence was inadmissible, we should consider its admission to be harmless error and cites Succession of Land, 212 La. 103, 31 So.2d 609 (1947) where the court stated, on page 31 So.2d 620:
"John R. Land, Jr., contended that during the trial in the lower court considerable parol evidence was admitted, largely hearsay or self-serving declarations purporting to have been made by parties deceased. This contention presents little or nothing for review. Even if we concede that the evidence of which he complained was improperly adduced and should not be considered or given any weight, in our opinion there is sufficient competent evidence in the record to enable us to reach the conclusion to which we have come, and all the evidence to which he objected could be disregarded entirely, and yet the same result would be reached in this decision."
We note that the Supreme Court in Land, supra, did come to its own decision after a thorough opinion dealing with the facts present there and the applicable law.
We have reviewed the evidence presented to the jury and feel it necessary to reiterate the well-established jurisprudential rules applicable to a review of their verdict.
"When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review, the appellate court should not disturb this factual finding in the absence of manifest error." Canter v. Koehring Company, 283 So.2d 716 (La.1973).
Therefore, the appellate review of facts is not completed by reading so much of the record as will reveal a reasonable factual basis for the finding in the trial court; there must be a further determination that the record establishes that the finding is not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Dofflemyer v. Gilley, 384 So.2d 435 (La.1980).
Our review of the extensive record in this case, eliminating altogether the hearsay evidence of which the plaintiff complained, establishes that the jury's finding of no negligence on the part of the above-mentioned "executive officers" of the Police Jury is not clearly wrong.
This determination is based on a number of factors such as, the plaintiff had alternative methods of dismounting from the bulldozer; and, while the suggested safety devices (such as handholds, etc.) of certain engineering groups or societies were non-existent on the right side of the bulldozer, there were other objects (such as levers and pedals) that could have been used for the same purposes.
The trial jury in this case had an opportunity and did view the bulldozer for itself, *583 and apparently did not consider it to be a hazard to the operators thereof. We further note that defendant's expert witness, a large man, was able to mount and dismount from the bulldozer on the left side where safety features were present.
Finally, plaintiff argues on appeal that it was improper for the trial judge to allow the introduction of this hearsay evidence because plaintiff had no advance warning from the defendant that it would do so and, at the very least, the trial court should have granted plaintiff a recess so that he could depose these witnesses.
Plaintiff cites no authority for his proposition that an opposing party must give advance warning of its intent to use hearsay evidence to impeach a witness and we find that there is no such requirement. Further, there is no authority for the proposition that a trial court must recess a trial to allow a party to depose witnesses that it has learned will testify for purposes of impeachment.

THE JURY INSTRUCTIONS
Plaintiff argues that it was error for the trial court to refuse to give certain of his instructions to the jury.
In a jury trial, the judge is not required to give the precise instructions submitted by either party, but he must give instructions which properly reflect the law applicable in light of the pleadings and facts in each particular case. If instructions concerning negligence and liability are confusing or misleading, or omit an applicable essential legal principle, such instructions constitute reversible error. Gonzales v. Xerox Corporation, 320 So.2d 163 (La. 1975); Beck v. Lovell, 361 So.2d 245 (La. App. 1 Cir. 1978), writ denied, 362 So.2d 802 (La.1978).
Plaintiff sought to have the trial court give the following two instructions to the jury:
1. "Some of the Police Jury personnel in the case have argued that they have no knowledge of a dangerous condition on the dozer. The fact that they may have lacked such knowledge will not excuse them from liability if they had a duty to make themselves aware of such conditions. This is to say that if it is proven to you that it was the duty of one or more of the executive officers to be aware of the condition of the dozer, then failure of such officer to have such knowledge may be considered as evidence of negligence." 2. "An employee cannot be expected to harass or pester his employer or supervisor with demands for changes in the working environment because he may suffer loss of his job or decrease in the likelihood of promotion."
The trial court, prior to instructing the jury, noted plaintiff's objection to its alleged failure to include these particular ones therein. The trial court then overruled the objection, stating:
"The court overrules the objections on the basis that the charges requested are either already included in the court's general charge or as submitted place undue emphasis on certain factors in the case or in the opinion of the court are incorrect statements of the law."
The record reflects that, as to plaintiff's first requested charge set out above, the trial court instructed the jury as follows:
"Even if you find that these three menCarroll Fuselier, M. G. Greig, Sylvain Melancon or any of them are executive officers under the insurance policy, the defendant still is not necessarily liable to plaintiffs solely because of that fact. For such liability to exist, you must be satisfied that the St. Martin Parish Police Jury owed a duty of care to Alton Guidry and the breach of this duty was the cause of his injury; the duty owed Mr. Guidry was delegated by the police jury to the executive officer or officers in question; the executive officer or officers breached this duty through their own personal negligence or if the executive officer or officers further delegated this duty to a subordinate employee they knew or should have known the subordinate breached the duty." (Emphasis ours.)
*584 The second instruction requested by plaintiff would have gone to the issue of whether plaintiff was contributorily negligent in causing the injury he suffered. Plaintiff apparently formulated that instruction from a line of jurisprudence characterized by such cases as Coon v. Blaney, 353 So.2d 744 (La.App. 3 Cir. 1977), writ denied, 355 So.2d 263 (La.1978); and, O'Keefe v. Warner, 288 So.2d 911 (La.App. 1 Cir. 1973), writ denied, 293 So.2d 170 (La.1974).
The jury in this case found no negligence on the part of defendant's insured and, therefore, never reached the issue of plaintiff's contributory negligence. We find that the failure of the trial court to give this precise instruction as requested had no effect on the outcome of this action.
For the above and foregoing reasons, the judgment of the trial court is affirmed.
Costs of this appeal are assessed against plaintiff-appellant.
AFFIRMED.
SWIFT, J., concurs and assigns reasons.
CULPEPPER, J., concurs for the reasons assigned by SWIFT, J.
SWIFT, Judge, concurring.
I agree that the trial judge erred in admitting in evidence the out-of-court statements made by the deceased witness Melancon. Under the circumstances I do not believe that any weight should be attached to the jury's verdict on appellate review. However, eliminating the inadmissible evidence and without giving any weight whatever to the jury verdict, the record reflects that the plaintiff failed to establish negligence on the part of the so-called executive officers of the police jury which proximately caused the accident. Ragas v. Argonaut Southwest Insurance Co., 388 So.2d 707 (La.1980).
NOTES
[1] "§ 493. Foundation for proof of contradictory statement

Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such statement, evidence that he did make it is admissible."